BANK OF AMERICA NA p/k/a Countrywide Home
Loan Servicing LP p/k/a BAC Home Loans Ser-
vicing LP, Plaintiff-Respondent,

v.

Jeffrey S. NEIS, Defendant-Appellant,

Jane Doe NEIS and M&I Marshall & Ilsley Bank,
Defendants.

Court of Appeals

*No. 2012AP1994. Submitted on briefs March 19, 2013.
—Decided June 20, 2013.*

2013 WI App 89

(Also reported in 835 N.W.2d 527.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Reed J. Peterson* of *Reed Peterson & Associates, LLC*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David P. Muth, John R. Remington,* and *Brandon R. Gutschow* of *Quarles & Brady LLP,* Milwaukee.

Before Higginbotham, Blanchard and Kloppenburg, JJ.

¶ 1. BLANCHARD, J. Jeffrey Neis appeals a circuit court judgment granting foreclosure to Bank of America on Neis's residential mortgage and note.[1] The parties dispute whether several documents that Bank of America submitted in support of its motion for summary judgment are admissible under Wis. Stat. § 908.03(6) (2011–12),[2] the hearsay exception for records of regularly conducted activity. The documents include the mortgage and note, a document showing Neis's payment history, a notice of intent to accelerate payments, and an "account information statement" summarizing the status of Neis's account.

¶ 2. Applying the standards in *Palisades Collection LLC v. Kalal,* 2010 WI App 38, 324 Wis. 2d 180, 781 N.W.2d 503, we conclude that the payment history, notice of intent to accelerate, and account information statement are admissible under Wis. Stat. § 908.03(6), but not the mortgage and note. We also conclude, however, that the mortgage and note are not hearsay. Because Neis makes no additional developed argument directed at the admissibility of the mortgage and note,

---

[1] The mortgage and note show Jeffrey Neis as one of two co-borrowers. However, Jeffrey Neis is the sole appellant in this appeal. We will refer only to Neis regardless of whether we mean Neis as a litigant or both co-borrowers on the mortgage and note.

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

464

we further conclude that they are admissible. Finally, we reject other arguments that Neis makes. Accordingly, we affirm the circuit court's judgment.

## BACKGROUND

¶ 3. In the foreclosure complaint, Bank of America alleged that Neis defaulted on a residential mortgage and note, and that he owed a principal sum of $405,799.32, plus interest.[3] The Bank attached a copy of a note executed between Neis and M&I Marshall & Ilsley Bank ("M&I"), obligating Neis to repay M&I $163,068 in principal plus interest.

¶ 4. Neis denied most of the complaint's allegations. In addition, he affirmatively alleged that Bank of America did not own or hold the note referenced in the complaint and did not hold a valid mortgage on the subject property.

¶ 5. Bank of America moved for summary judgment. In support of its motion, Bank of America submitted two affidavits, one of Bank of America employee Cindy Morris, and one of Bank of America attorney Steven Zablocki, both with attached documents. We need not detail the Morris affidavit because, as explained below, we do not consider it. It is enough to note that the affidavit attached copies of the payment his-

[3] To be precise, the foreclosure complaint was filed by BAC Home Loans Servicing, LP, an entity that was Bank of America's predecessor in interest. On April 17, 2012, the circuit court issued an order amending the plaintiff's name in the caption from BAC Home Loans to Bank of America. We will generally refer only to Bank of America, except when necessary to refer to BAC Home Loans for purposes of clarity. As we discuss below, Neis does not dispute that BAC Home Loans was Bank of America's predecessor in interest.

tory, notice of intent to accelerate, and account information statement. The Zablocki affidavit attached the following documents:

- A certified copy of a mortgage between Neis and M&I, referencing a note executed between Neis and M&I for $417,000, as opposed to the $163,068 note attached to the complaint.[4]

- A certified copy of an assignment of the mortgage, filed with the register of deeds, appearing to show that the mortgage, and previously the note, were both assigned to BAC Home Loans from Mortgage Electronic Registrations Systems, Inc. ("MERS"), as nominee for M&I.

¶ 6. Neis objected to the admissibility of the documents attached to Bank of America's affidavits, and argued that Bank of America's submissions failed to make a prima facie showing for summary judgment. Neis argued, among other things, that the documents that Bank of America submitted included hearsay, and that Morris's averments were insufficient to show that the documents attached to her affidavit were admissible under Wis. Stat. § 908.03(6), the hearsay exception for records of regularly conducted activity.[5]

---

[4] As we discuss below, it appears that Bank of America mistakenly attached an incorrect note to its complaint but later supplied the correct note for $417,000. However, Neis provides no persuasive reason why this initial mistake by Bank of America, later corrected, should prevent summary judgment.

[5] Wisconsin Stat. § 908.03(6) provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events,

¶ 7. The circuit court allowed Bank of America to file an additional affidavit supplementing its summary judgment materials. This affidavit was of Bank of America employee Shalini Doss-Parker. The Doss-Parker affidavit contained a number of averments regarding Doss-Parker's knowledge of Bank of America's record-keeping practices. In addition, Doss-Parker's affidavit attached the following documents, most of which had been attached to the Morris affidavit as well:

- A copy of the mortgage.

- A copy of the $417,000 note, which included a copy of an undated "allonge"[6] with two undated endorse-

conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with s. 909.02 (12) or (13), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

This hearsay exception is sometimes referred to as the "business records" exception. *See, e.g., State v. Kandutsch*, 2011 WI 78, ¶ 56, 336 Wis. 2d 478, 799 N.W.2d 865. However, we will generally refer to § 908.03(6) as the hearsay exception for "records of regularly conducted activity," or as the "§ 908.03(6) hearsay exception." The text of the statute does not limit the exception to "business" records. *See* § 908.03(6); *see also* DANIEL D. BLINKA, 7 WIS. PRAC., WIS. EVIDENCE § 803.6 (2d ed. 2001) (observing that "business records" terminology "is somewhat misleading" because "the rule extends without limitation to the records of any 'regularly conducted activity' ").

[6] "An allonge is a slip of paper attached to a negotiable instrument for the purpose of receiving an endorsement." *PNC Bank, N.A. v. Bierbrauer*, 2013 WI App 11, ¶ 7 n.2, 346 Wis. 2d 1, 827 N.W.2d 124 (Ct. App. 2012) (citing BLACK'S LAW DICTIONARY 83 (8th ed. 2004)).

ments, one by M&I payable to Countrywide Bank, FSB, and one by Countrywide Bank, FSB, in blank.[7]

- A copy of the payment history, purporting to show Neis's payments on his mortgage and note.

- A copy of the notice of intent to accelerate, which informed Neis that he was in default.

- A copy of the account information statement, purporting to show that Neis owed an unpaid principal balance of $405.799.32 and a total of $444,934.69.

¶ 8. The circuit court set a schedule for supplemental briefing, and Neis deposed Doss-Parker. Bank of America argued in its supplemental briefing that the mortgage and note were not hearsay and were admissible. Bank of America also argued that Doss-Parker's affidavit and deposition testimony established that the payment history, notice of intent to accelerate, and account information statement were admissible under the WIS. STAT. § 908.03(6) hearsay exception.

¶ 9. Although Neis failed to file a supplemental brief, the circuit court allowed Neis to submit a transcript of Doss-Parker's deposition and rely on it for his arguments at a hearing. Neis argued that Doss-Parker's deposition testimony showed that she lacked the required "personal knowledge" to make the documents attached to her affidavit admissible under WIS. STAT. § 908.03(6). Specifically, Neis argued that her deposition testimony showed that she was not present when the documents attached to her affidavit were created

---

[7] "If endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." WIS. STAT. § 403.205(2); *see also PNC Bank*, 346 Wis. 2d 1, ¶ 12 (note endorsed in blank is payable to bearer of note).

and that she had no knowledge of, or responsibility for, the processes by which the documents were created.

¶ 10. The circuit court concluded, without providing reasoning, that Bank of America's evidence was admissible under WIS. STAT. § 908.03(6). Based on this evidentiary ruling, the circuit court concluded that Bank of America had shown that it was entitled to enforce the mortgage and note. The court further concluded that there was no genuine dispute as to Neis's default. Accordingly, the court granted summary judgment to Bank of America and entered a judgment of foreclosure in Bank of America's favor against Neis. As indicated above, Neis appeals.

## DISCUSSION

¶ 11. Before proceeding to our analysis, we briefly explain why we do not consider the Morris affidavit in this appeal. It appears based on the proceedings in the circuit court that the court and Bank of America treated the Doss-Parker affidavit as a substitute or replacement for the Morris affidavit. In addition, Bank of America makes no argument specific to the Morris affidavit on appeal. We therefore conclude that Bank of America concedes that the Morris affidavit adds nothing to its case for summary judgment at this juncture in the proceedings.[8]

---

[8] Like Bank of America, Neis develops no argument specific to the Morris affidavit on appeal, and in any case it would not matter because we do not address the Morris affidavit for the reasons stated above. We note in passing, however, that Neis purports to "incorporate" by reference in his appellate brief his circuit court briefing regarding the Morris affidavit. Counsel is reminded that this is not permissible appellate advocacy; at a minimum, it creates the potential for exceeding the allowable length of briefs and violates the rule addressing the required

¶ 12. As indicated above, the primary dispute the parties present on appeal is whether the documents attached to the Doss-Parker affidavit are admissible under the WIS. STAT. § 908.03(6) hearsay exception. We thus begin with this issue and conclude that the payment history, notice of intent to accelerate, and account information statement, but not the mortgage and note, are admissible under § 908.03(6). We also conclude, however, that the mortgage and note are not hearsay. Because Neis makes no additional, developed argument directed at the admissibility of the mortgage and note, we further conclude that they are admissible. Finally, we reject other arguments that Neis makes.

A. *Admissibility of Documents Under* WIS. STAT. *§ 908.03(6)*

¶ 13. Neis argues that Doss-Parker's affidavit and deposition testimony show that she lacks personal knowledge to lay the foundation necessary to make the documents attached to her affidavit admissible under WIS. STAT. § 908.03(6). According to Neis, Doss-Parker's affidavit does no more than merely "parrot" the foundational requirements under § 908.03(6), and her deposition shows that she lacks the requisite personal knowledge. Bank of America contends that the circuit court correctly applied § 908.03(6).

¶ 14. Our analysis of this issue will be in four parts. We first address our standard of review, which the parties dispute, and conclude that it is de novo under the *Palisades* decision, given the circumstances here. Second, we summarize additional applicable stan-

form of appellate arguments. *See State v. Flynn*, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994); *see also* WIS. STAT. RULE 809.19(1)(e) (explaining the required format for arguments in appellant's brief).

dards from *Palisades*. Third, we apply those standards to Doss-Parker's affidavit to conclude that, through this affidavit, Bank of America made a prima facie showing that the payment history, notice of intent to accelerate, and account information statement, but not the mortgage and note, are admissible under Wis. Stat. § 908.03(6). Finally on this issue, we conclude that Neis fails to demonstrate that Doss-Parker's deposition testimony defeats Bank of America's prima facie showing as to the payment history, notice of intent to accelerate, and account information statement.

### 1. Standard of Review

¶ 15. In *Palisades*, we observed that, although it is well established that we review summary judgment de novo, there may sometimes be a different standard of review when we review circuit court evidentiary rulings in the summary judgment context. *Palisades*, 324 Wis. 2d 180, ¶ 13. We elaborated with the following observations:

> Although it is well established that we employ the summary judgment methodology de novo, there may be a different standard of review for decisions on whether an affidavit meets the requirements that it is "made on personal knowledge and . . . set[s] forth such evidentiary facts as would be admissible in evidence." Wis. Stat. § 802.08(3). These decisions may involve evidentiary rulings that are committed to the circuit court's discretion. *Gross* [*v. Woodman's Food Mkt., Inc.*, 2002 WI App 295], 259 Wis. 2d 181, ¶ 32[, 655 N.W.2d 718]. In other words, the circuit court, in deciding if an affidavit "is made on personal knowledge and sets forth such facts as would be admissible in evidence," is undertaking essentially the same analysis that it would undertake at trial to decide whether the affiant, now witness, testifying exactly as averred in the affidavit, is

471

presenting admissible evidence. For example, in *Gross* we reviewed as discretionary the circuit court's decisions that an affidavit presented an adequate foundation that the affiant had the knowledge and experience to give an expert opinion on a particular topic, had personal knowledge on another topic, and adequately explained an attached chart so as to make the chart admissible in evidence. *Gross*, 259 Wis. 2d 181, ¶¶ 36–38. *See* WIS. STAT. §§ 907.02 and 906.02 . . . .

However, not all evidentiary rulings are discretionary. For example, if an evidentiary issue requires construction or application of a statute to a set of facts, a question of law is presented and our review is de novo. *State v. Jensen*, 2007 WI App 256, ¶ 9, 306 Wis. 2d 572, 743 N.W.2d 468.

*Id.*, ¶¶ 13–14. In *Palisades*, we determined that it did not matter on the facts of that case whether we used a de novo standard of review or the more deferential standard of review for discretionary decisions, because under no reasonable view did the affidavit in that case show that the affiant had the type of personal knowledge needed to make the records attached to her affidavit admissible under WIS. STAT. § 908.03(6). *See id.*, ¶ 15.

■
¶ 16. In this case, Neis argues that there is no discretionary decision for us to defer to. That is, Neis argues that the circuit court's decision provides no analysis and therefore fails to show that the court in fact exercised any discretion. We agree. The circuit court's ruling does not reflect any discernible exercise of discretion. Even so, the WIS. STAT. § 908.03(6) issue in this case turns not on any discretionary factor but solely on the application of legal standards to a given set of facts. We therefore review the circuit court's application of § 908.03(6) de novo. *See Palisades*, 324 Wis. 2d 180, ¶ 14.

## 2. Additional Palisades Standards

¶ 17. For his more specific arguments, Neis relies primarily on additional standards from *Palisades*. We summarize the pertinent standards from *Palisades* in some detail. Then in the next two sections we apply them to Doss-Parker's affidavit and deposition.

¶ 18. As indicated above, for a record to be admissible under Wis. Stat. § 908.03(6), it must be "made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness." The central issue in *Palisades* was whether the proponent of the evidence there met these requirements. *See Palisades*, 324 Wis. 2d 180, ¶¶ 16–25.

¶ 19. The documents attached to the affidavit in *Palisades* consisted of credit card account statements labeled "Chase . . . Mastercard Account Summary." *Id.*, ¶ 4. The affiant there averred that she was "a duly authorized representative of [Palisades], the owner of [the credit card] account through purchase." *Id.* In addition, she averred that, as a Palisades authorized representative,

I have control over and access to records regarding the account of the above referenced Defendant(s), further, the original owner [Chase Manhattan Bank] maintained records pertaining to its business; that the records were prepared in the ordinary course of business, at or near the time of the transaction or event, by a person with knowledge of the event or transaction, that such records are kept in the ordinary course of the original creditor's business and that of [Palisades]; and that based upon my review of the business records of

473

the original creditor, I have personally inspected said account and statements regarding the balance due on said account.

*Id.*, ¶ 5. This court concluded that the affidavit failed to establish a prima facie case because it did not show that the affiant was a witness who was qualified, based on personal knowledge, to testify to the elements required for admissibility of the account statements under the hearsay exception for records of regularly conducted activity. *Id.*, ¶ 1.

██

¶ 20. This court explained in *Palisades* that "WIS. STAT. § 908.03(6) does not require that the 'custodian or other qualified witness' be the original owner of the records." *Id.*, ¶ 20. "However, under the plain language of this [hearsay] exception, being a present custodian of the records is not sufficient." *Id.* Rather, § 908.03(6) requires that "a testifying custodian must be *qualified* to testify that the records (1) were made at or near the time by, or from information transmitted by, a person with knowledge; and (2) that this was done in the course of a regularly conducted activity." *Id.* (emphasis in *Palisades*).

¶ 21. As most relevant here, the court in *Palisades* further explained that, in order to be qualified to testify on these two points, the affiant needed to have personal knowledge (1) of *how the account statements were prepared* and (2) that they were prepared in the course of a regularly conducted activity. *See id.*, ¶ 21. The court elaborated as follows:

It is true, as Palisades contends, that a custodian or other qualified witness *does not need to be the author of the records or have personal knowledge of the events recorded* in order to be qualified to testify to the

474

requirements of Wis. Stat. § 908.03(6). However, the witness *must have personal knowledge of how the records were made* so that the witness is *qualified to testify that they were made "at or near the time [of the event] by, or from information transmitted by, a person with knowledge"* and "in the course of a regularly conducted activity."

*Id.*, ¶ 22 (emphasis added). Applying these standards, we concluded in *Palisades* that the affidavit in that case "presents no facts that show [the affiant] has personal knowledge of how the account statements were prepared and whether they were prepared in the ordinary course of Chase's business." *Id.*, ¶ 23. The court explained that the problem was not that the averments of fact were too "general" in nature, but that "nothing in the affidavit reasonably implies that [the affiant] has personal knowledge of these general facts." *Id.*, ¶ 24.

██

¶ 22. *Palisades* also supplies a procedural framework for analyzing evidentiary issues in the summary judgment context. "On summary judgment, the party submitting the affidavit need not submit sufficient evidence to conclusively demonstrate the admissibility of the evidence it relies on in the affidavit." *Id.*, ¶ 10. Rather, "[t]hat party need only make a prima facie showing that the evidence would be admissible at trial." *Id.* "If admissibility is challenged, the court must then determine whether the evidence would be admissible at trial." *Id.*

¶ 23. Applying this framework, we next address whether Doss-Parker's affidavit makes a prima facie showing that the documents attached to it are admissible under Wis. Stat. § 908.03(6). Because we conclude that the affidavit makes a prima facie showing as to some of the documents, and because Neis challenges

the admissibility of those documents based on Doss-Parker's deposition testimony, we then address whether the portions of Doss-Parker's deposition testimony on which Neis relies defeat that prima facie showing.

### 3. Doss-Parker's Affidavit

¶ 24. We scrutinize Doss-Parker's affidavit under the *Palisades* standards in order to determine whether it makes a prima facie showing for purposes of WIS. STAT. § 908.03(6) for each of the five documents attached to it. In an effort to assist the reader in this task, we will first quote the most pertinent portions of the affidavit. Applying the *Palisades* standards, we next make initial observations about portions of the affidavit that appear intended to apply to all five documents, then address the remaining portions, some of which are specific only to the payment history, notice of intent to accelerate, and account information statement, and others of which are specific only to the mortgage and note.

¶ 25. Doss-Parker's affidavit included the following averments:

> 2. I am employed by [Bank of America] as a[n] AVP [assistant vice president], Operations Team Lead. I am familiar with the record keeping practices of [Bank of America]. I have received training on the computer systems used by [Bank of America] to service borrowers' loans, understand the codes used in those systems, and have personal knowledge of [Bank of America]'s computer system, including how information is made and kept in that system.

> 3. [Bank of America] maintains records for the subject Loan ("the Loan"). As part of my job responsi-

bilities for [Bank of America], I am familiar with the type of records maintained by [Bank of America] in connection with the Loan.

4. Attached hereto . . . is a true and correct copy of the assigned *Note* . . . . I have personal knowledge of [Bank of America]'s procedures for maintaining original loan documents. [The original loan documents] are (a) made at or near the time of the occurrence of the matters and signed by the borrowers and (b) kept in the course of [Bank of America]'s regularly conducted business activities; and (c) it is the regular practice of [Bank of America] to make and maintain such records . . . .

5. Attached hereto . . . is a true and correct copy of the *Mortgage*. I have personal knowledge of [Bank of America]'s procedures for maintaining original loan documents. [The original loan documents] are (a) made at or near the time of the occurrence of the matters and signed by the borrowers and (b) kept in the course of [Bank of America]'s regularly conducted business activities; and (c) it is the regular practice of [Bank of America] to make and maintain such records.

6. Attached hereto . . . is a true and correct copy of the Loan's *payment history* that details payments made on the Loan from January 2008 through June 2011. This document is taken from [Bank of America]'s business records. I have personal knowledge of [Bank of America]'s procedures for creating these records. [Bank of America's business records] are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of [Bank of America]'s regularly conducted business activities; and (c) it is the regular practice of [Bank of America] to make such records . . . .

7. Attached hereto . . . is a true and correct copy of the *Notice of Intent to Accelerate* . . . that was mailed to

477

the borrowers . . . . This document is taken from [Bank of America]'s business records. I have personal knowledge of [Bank of America]'s procedures for creating these records. [Bank of America's business records] are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of [Bank of America]'s regularly conducted business activities; and (c) it is the regular practice of [Bank of America] to make such records.

8. Attached hereto . . . is a true and correct copy of the Loan's *Account Information Statement* . . . . This document is taken from [Bank of America]'s business records. I have personal knowledge of [Bank of America]'s procedures for creating these records. [Bank of America's business records] are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of [Bank of America]'s regularly conducted business activities; and (c) it is the regular practice of [Bank of America] to make such records.

(Emphasis added.)

¶ 26. We make the following initial observations about Doss-Parker's averments that appear intended to apply to all five documents.

¶ 27. First, Doss-Parker averred generally in paragraph 2 that she has been trained in Bank of America computer "systems" and that she has personal knowledge of "how information is made" in Bank of America's computer "system." Without more explanation, however, the significance of this averment is unclear. Even putting aside ambiguity and vagueness

478

inherent in referring first to Bank of America's uniden-
tified "computer systems" (plural) and then to its uni-
dentified "computer system" (singular), paragraph 2
draws no connections between, on the one hand, Doss-
Parker's personal knowledge of how information was
made on any particular computer "system" or "systems"
and, on the other hand, any of the particular documents
that she referred to in the affidavit. Thus, the aver-
ments in paragraph 2 do not show that Doss-Parker
knew how any of the documents attached to her affida-
vit had been prepared or created.

¶ 28. Second, in paragraph 3, Doss-Parker gener-
ally averred that she is "familiar" with the type of
records "*maintained*" by Bank of America in connection
with Neis's loan. (Emphasis added.) This averment
similarly does not show that Doss-Parker knew how any
of the documents attached to her affidavit were pre-
pared or created.

¶ 29. Having made those observations, we ad-
dress the remaining portions of the affidavit, some of
which are specific only to the payment history, notice of
intent to accelerate, and account information state-
ment, and others of which are specific only to the
mortgage and note. We conclude for the reasons ex-
plained in more detail below that Doss-Parker's affida-
vit makes a prima facie showing that the payment
history, notice of intent to accelerate, and account
information statement, but not the mortgage and note,
are admissible under WIS. STAT. § 908.03(6).

> a. *Payment History, Notice of Intent to Accel-
> erate, and Account Information Statement*

¶ 30. In paragraphs 6, 7, and 8 of her affidavit,
Doss-Parker made averments that are worded in sub-
stantively identical ways and that apply to the payment

479

history, notice of intent to accelerate, and account information statement. In addition, those three documents are each stamped with a Bank of America logo or otherwise appear on their face to be records that Bank of America generated. We thus analyze these three documents as one category.

¶ 31. As indicated above, Doss-Parker averred that she was employed by Bank of America and that she is familiar with Bank of America's record keeping practices. In addition, she specifically averred that the payment history, notice of intent to accelerate, and account information statement were each "taken from [Bank of America's] business records," and that she has personal knowledge of Bank of America's "*procedures for creating*" those records. (Emphasis added.) She further averred that "it is the regular practice of [Bank of America] to make such records." These averments, in combination with Doss-Parker's more general averments in the preceding paragraphs of her affidavit, are sufficient to make a prima facie showing under WIS. STAT. § 908.03(6) as to the payment history, notice of intent to accelerate, and account information statement.

¶ 32. Stated in *Palisades* terms, Doss-Parker's averments made at least a prima facie showing that Doss-Parker had personal knowledge (1) of how the payment history, notice of intent to accelerate, and account information statement, were prepared or created, and (2) that these three documents were prepared in the ordinary course of Bank of America's business. *See Palisades*, 324 Wis. 2d 180, ¶ 21. In other words, her affidavit constituted a showing that she had the requisite personal knowledge and was qualified to testify that the payment history, notice of intent to accelerate, and account information statement "(1) were made at or near the time by, or from information transmitted by, a person

with knowledge; and (2) that this was done in the course of a regularly conducted activity." *See id.*, ¶ 20.

¶ 33. It is true that some of Doss-Parker's averments seem to, in Neis's words, "parrot" the requirements of Wis. Stat. § 908.03(6), and to the extent that her averments merely state legal conclusions we disregard them. *See Gross v. Woodman's Food Mkt., Inc.*, 2002 WI App 295, ¶ 20 n.12, 259 Wis. 2d 181, 655 N.W.2d 718 (courts disregard legal conclusions in affidavits in a motion for summary judgment). Doss-Parker's affidavit would be insufficient for purposes of § 908.03(6) if it contained only legal conclusions of this nature. However, we are satisfied that Doss-Parker's affidavit does more than merely parrot the statute's requirements or make legal conclusions, at least as to the payment history, notice of intent to accelerate, and account information statement. It additionally contains sufficient factual assertions to make a prima facie showing that those three documents are admissible under § 908.03(6).

¶ 34. Neis argues that Doss-Parker's affidavit represents nothing more than the assertions of a "spokesperson" or "robowitness" lacking personal knowledge regarding the creation of these documents. In support of this argument, Neis points out that the affidavit did not specify "the procedures used to create" them, "where" they were created, and whether they were created by a third party. On this last point, we conclude that it is not a reasonable reading of the affidavit that Doss-Parker failed to aver that Bank of America created the payment history, notice of intent to accelerate, or the account information statement. As to the other points, Neis appears to suggest that a prima facie evidentiary foundation for purposes of Wis. Stat. § 908.03(6) requires, if not proof that the affiant was personally present when

481

the documents at issue were created, then at least proof of what particular procedures were followed in creating them. However, the need for this type of proof in a prima facie showing is not suggested by *Palisades* or any other authority Neis cites. *Palisades* requires a showing that the witness has personal knowledge of how the documents in question were created, not that the witness describe the procedures used to create those documents or the precise location of their creation. Of course such a description could help support a prima facie showing that the witness has the requisite knowledge. However, such a description is not necessary to make the required showing.

¶ 35. The prima facie case for summary judgment on an evidentiary issue must be understood as representing a threshold showing only. As discussed in more detail below, under the second stage of the summary judgment procedure set forth in *Palisades*, and as occurred in this case, if admissibility is challenged, the challenging party is then free to attempt to defeat a prima facie showing based on additional evidence. For example, as discussed below, in this case Neis attempts to use Doss-Parker's deposition to challenge admissibility under Wis. Stat. § 908.03(6).

### b. Mortgage and Note

¶ 36. In paragraphs 4 and 5 of her affidavit, Doss-Parker makes additional averments that are worded in substantively identical ways and apply only to the mortgage and note. However, as explained further below, those averments differ in material ways from the averments in paragraphs 6, 7, and 8 addressing the payment history, notice of intent to accelerate, and account information statement. In addition, the mortgage and note contain nothing on their face to

indicate that they were created by Bank of America, unlike the payment history, notice of intent to accelerate, and account information statement. On the contrary, the mortgage and note appear on their respective faces to have been prepared by M&I. We therefore analyze these two documents as a separate category.

¶ 37. The fact that Bank of America did not prepare or create the mortgage and note is not, by itself, necessarily dispositive for purposes of WIS. STAT. § 908.03(6). *See Palisades*, 324 Wis. 2d 180, ¶ 22. However, Doss-Parker's affidavit fails to make a prima facie showing that she had personal knowledge (1) of how the M&I mortgage and note were prepared or created, and (2) that the mortgage and note were prepared in the ordinary course of M&I's business. *See id.*, ¶ 21. Doss-Parker did not make any averments suggesting that she knows how M&I prepares mortgages and notes, nor did she make any averments suggesting that she knows that the mortgage and note were prepared in the ordinary course of M&I's business. Rather, Doss-Parker made averments suggesting that she has personal knowledge of how *Bank of America* prepares mortgages and notes and that *Bank of America* prepares mortgages and notes in the regular course of its business. In this respect, Doss-Parker's averments as to the mortgage and note are deficient under § 908.03(6) in the same way that the *Palisades* affiant's averments as to the credit card statements in that case were deficient.

¶ 38. Accordingly, we conclude that Doss-Parker's affidavit failed to make a prima facie showing that the mortgage and note are admissible under WIS. STAT. § 908.03(6).

483

### 4. Doss-Parker's Deposition

¶ 39. Following the procedural framework in *Palisades*, we next turn to whether Doss-Parker's deposition testimony defeats the prima facie showing in her affidavit that the payment history, notice of intent to accelerate, and account information statement are admissible under WIS. STAT. § 908.03(6). Neis argues that Doss-Parker's deposition testimony shows, contrary to her affidavit, that she lacked personal knowledge of how those documents were prepared or created.

¶ 40. Neis directs us to portions of Doss-Parker's deposition testimony in which she testified that neither she nor any employee she supervises entered any of the information that is used to prepare or create documents such as the payment history, notice of intent to accelerate, and account information statement. These portions of Doss-Parker's deposition also reflect Doss-Parker testifying "no" in response to questions by Neis's counsel as to whether she has "personal knowledge" of how information is entered into Bank of America's computer systems and of how that information is used to generate the payment history, notice of intent to accelerate, and account information statement. Thus, Doss-Parker's testimony would seem, at least when summarized this way, to show that, contrary to her affidavit, she lacks personal knowledge of how the documents were prepared or created. In other words, portions of Doss-Parker's deposition testimony would seem to contradict the portion of her affidavit in which she averred that she had personal knowledge of Bank of America's "procedures for creating" such documents.

¶ 41. As Bank of America explains, however, this testimony must be read in light of the way Neis's counsel framed questions during the deposition. We

conclude that counsel's framing of questions is pivotal, given the nature of the challenge Neis makes. Specifically, counsel instructed Doss-Parker that, when counsel asked about her "personal knowledge," counsel meant knowledge resulting from Doss-Parker "personally being there":

> [Doss-Parker:] Can you expand on what you're referencing to personal knowledge?
>
> [Counsel:] *Personal knowledge means knowledge of how they were created based on personally being there.* For example, as we've been sitting here today, I've been taking notes *and so you would have personal knowledge of me taking these notes.*
>
> [Doss-Parker:] I wasn't personally there when these documents were created.

(Emphasis added.) Subsequent to this direction, counsel repeatedly posed questions to Doss-Parker in terms of whether she had "personal knowledge" of how records were created. A representative example of the questioning is as follows:

> [Counsel:] . . . [Y]ou don't have personal knowledge of how the data that was used to create this report was entered into Bank of America's system, correct?
>
> [Doss-Parker:] Correct.

Thus, while the portions of Doss-Parker's testimony on which Neis relies appear, in isolation, to show that she lacked the requisite personal knowledge under *Palisades*, those portions of her testimony do not in fact make such a showing when read in the context of counsel's definition of "personal knowledge" for purposes of the deposition.

¶ 42. We agree with Bank of America that Neis's counsel's deposition questions, and therefore Neis's

485

arguments relying on Doss-Parker's deposition testimony, are based on an incorrect and overly narrow definition of "personal knowledge" for purposes of WIS. STAT. § 908.03(6). Neis cites no authority for the proposition that personal knowledge in this context means what Neis suggests, as discussed in ¶ 34 above, namely that the witness was present for a record's preparation or creation. *Palisades* and the other authorities that the parties have briefed all indicate the contrary. *See Palisades*, 324 Wis. 2d 180, ¶ 22 (witness "does not need to . . . have personal knowledge of the events recorded"); *id.*, ¶ 20 (witness need not be original owner of records); *see also Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 120 Wis. 2d 227, 229–30, 353 N.W.2d 788 (1984) (concluding that summaries of invoices prepared by town clerk were admissible under § 908.03(6) based on testimony of town chair); *City of Milwaukee v. Allied Smelting Corp.*, 117 Wis. 2d 377, 391–92, 344 N.W.2d 523 (Ct. App 1983) (concluding that sewer inspection reports prepared by sewer inspection crews were admissible for purposes of § 908.03(6) based on testimony of crew supervisor), *overruled on other grounds by Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 759, 456 N.W.2d 570 (1990); DANIEL D. BLINKA, 7 WIS. PRAC., WIS. EVIDENCE § 803.6 (2d ed. 2001) ("The foundation witness need not be a member of the entity, provided he or she is knowledgeable about the record keeping activities . . . . Depending on the 'business,' the report may have been made long before the [witness] was even hired.").

¶ 43. Neis had a full opportunity at the deposition to put to Doss-Parker questions about her personal knowledge, or lack thereof, regarding how the documents at issue here were prepared or created, and regarding whether they were prepared in the ordinary course of Bank of America's business. Neis cannot now

upset the summary judgment decision by relying on what are perhaps ambiguous answers by Doss-Parker given under an erroneous "personal presence" standard that Neis made the basis of questioning.

¶ 44. Aside from his reliance on this erroneous standard, Neis does not make any developed argument as to how it is that Doss-Parker's deposition might show that she lacked the requisite personal knowledge. If there are other portions of Doss-Parker's deposition that could support Neis, despite the incorrect standard that counsel's questioning introduced into her testimony, Neis does not explain this sufficiently with reference to such portions of the deposition.

¶ 45. Accordingly, Neis fails to persuade us that Doss-Parker's deposition testimony shows that Doss-Parker lacked the requisite personal knowledge, as that concept is used in the context of WIS. STAT. § 908.03(6) and *Palisades*. We therefore conclude that Neis fails to defeat the prima facie showing in Doss-Parker's affidavit that she had personal knowledge of how the payment history, notice of intent to accelerate, and account information statement were prepared or created.

■

¶ 46. For all of the reasons stated above, we conclude that the circuit court correctly applied WIS. STAT. § 908.03(6) to the payment history, notice of intent to accelerate, and account information statement, but not to the mortgage and note.[9]

---

[9] Neis makes a one-paragraph argument that, regardless of his other arguments, the payment history and account information statement are not admissible under WIS. STAT. § 908.03(6) because they were prepared for litigation purposes. He relies for this argument on *State v. Williams*, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919, involving a state crime laboratory report showing a positive test for a controlled substance.

### B. Admissibility of Mortgage and Note as Non-hearsay Evidence

¶ 47. In the circuit court, Bank of America argued that the mortgage and note are not hearsay and are therefore admissible regardless of Wis. Stat. § 908.03(6). The circuit court did not reach this argument, and Bank of America relegates it to a footnote in this appeal. However, we choose to consider this argument because it

---

See id., ¶ 4. The court in *Williams* explained that "[r]ecords prepared in anticipation of litigation traditionally have been deemed outside the reach of [§ 908.03(6)]." *Id.*, ¶ 38. The court determined that the state crime laboratory report was prepared for purposes of a criminal prosecution, and it concluded that the report was therefore not admissible under § 908.03(6). *See id.*, ¶ 49. The court reached this conclusion even though it appeared that the report was a record prepared in the ordinary course of the state crime laboratory's regularly conducted activities. *See id.*, ¶ 44.

We decline to address Neis's argument based on *Williams* because Neis fails to show that he raised this issue in the circuit court. *See State v. Ndina*, 2009 WI 21, ¶¶ 29–30, 315 Wis. 2d 653, 761 N.W.2d 612 (failure to timely raise an argument in the circuit court forfeits the argument on appeal). Even if Neis had timely raised this issue, however, we would conclude that his argument on appeal on this issue is inadequately developed. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not consider inadequately developed arguments). We note that the payment history and account information statement, although post-dating the complaint, are not necessarily analogous to the state crime laboratory report. In particular, as one of Bank of America's arguments suggests, the underlying information and record entries on which the payment history and account information statement are based are not likely to have been gathered or created for litigation purposes. Given the potential complexities this issue presents, including but not limited to the likelihood that it would need further factual development than Neis has supplied, we conclude that Neis needed to do more to adequately develop an argument on this issue.

presents a purely legal issue that is readily resolved on the record before us, because both parties have had the opportunity to brief the issue, and because our resolution of the issue results in upholding the circuit court's evidentiary ruling on alternative grounds. *See Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, ¶ 14, 295 Wis. 2d 556, 721 N.W.2d 704 (court of appeals "may affirm the circuit court on an alternative ground as long as the record is adequate and the parties have the opportunity to brief the issue on appeal").

¶ 48. We first observe that, in addition to the uncertified copy of the mortgage attached to Doss-Parker's affidavit, Bank of America submitted a *certified* copy of the mortgage as an attachment to the Zablocki affidavit, as indicated above. In addition, our review of the record shows that Bank of America produced the *original* note at the final hearing on its summary judgment motion, and that Neis did not object to this procedure at the time. Apart from his objection on grounds of hearsay, Neis makes no other developed arguments directed to the admissibility of the mortgage and note.[10]

██ ██

¶ 49. We conclude that the mortgage and note are not hearsay, and that the admissibility of those documents therefore does not depend on WIS. STAT.

---

[10] In his reply brief, in apparent response to certain Bank of America arguments, Neis for the first time makes extensive argument that the note is not a "negotiable instrument" under WIS. STAT. § 403.104(1) and is therefore not self-authenticating. We decline to consider this argument. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (court of appeals generally does not address arguments raised for the first time in a reply brief).

§ 908.03(6). In reaching this conclusion, we adopt the reasoning from our unpublished decision in *Lyon Financial Services, Inc. v. Dr. Manelle Fernando Medical Clinic, Inc.*, No. 2011AP222, unpublished slip op. (WI App Nov. 10, 2011), and follow what our research shows is a consensus rule that contracts, including promissory notes, are not hearsay when they are offered only for their legal effect, not "to prove the truth of the matter asserted":

> [The assignment of a lease] is not hearsay because it was not "offered in evidence to prove the truth of the matter asserted." Wis. Stat. § 908.01(3). Rather, it was offered to show the legal effect of the document, that is, that Lyon had the legal status of assignee of the lease. *See* 2 McCormick on Evidence § 249 (6th ed. Supp. 2009) (explaining that when a statement is not offered to prove the facts asserted but instead offered as evidence of a legal act, it is not hearsay; and illustrating this concept by explaining that *"[w]hen a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay"*); *see, e.g., United States v. Davis*, 596 F.3d 852, 856–57 (D.C. Cir. 2010) (checks and money orders are not hearsay because they are legally operative documents); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (wills, *contracts, and promissory notes have independent legal significance and are nonhearsay*); *McDonald v. Nat' l Enters., Inc.*, 547 S.E.2d 204, 210 (Va. 2001) (holding that a bill of sale and assignment of loans was "an operative legal document that embodies and evidences [a] conveyance," and because it was not offered for its "truth" but rather its "legal effect," it was not hearsay).

*Id.*, ¶ 19 (emphasis added); *see also In re Vargas*, 396 B.R. 511, 519 (Bankr. C. D. Cal. 2008) (promissory note is not hearsay); *Remington Invs., Inc. v. Hamedani*, 55 Cal. App. 4th 1033, 1042, 64 Cal. Rptr. 2d 376 (Cal. App.

1997) ("The Promissory Note document itself is not a business record as that term is used in the law of hearsay, but rather is an operative contractual document admissible merely upon adequate evidence of authenticity."); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 511 (Tex. App. 2010) ("The construction loan, mortgage note, and guaranty agreement were admissible because, as contracts, they have legal effect independent of the truth of any statements contained therein and are not hearsay."); CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:18 (3d ed. 2007) ("When [the words of a contract] are offered to prove a . . . transaction, the concerns underlying the hearsay doctrine are thought to disappear. The words are 'verbal acts' in the sense that they have legal significance independent of their assertive quality . . . ."); DAVID F. BINDER, HEARSAY HANDBOOK § 2:6 ("A written contract has independent legal significance. It defines the rights and obligations of the parties thereto, regardless of the truth of any assertions made in the document. Therefore, it is not hearsay.").[11]

¶ 50. Accordingly, we uphold the circuit court's ruling that the mortgage and note are admissible, albeit on alternative grounds.

---

[11] We note that this court has at least twice relied on *Lyon Financial Services, Inc. v. Dr. Manelle Fernando Medical Clinic, Inc.*, No. 2011AP222, unpublished slip op. (WI App Nov. 10, 2011), in unpublished decisions addressing mortgage notes. *See Onewest Bank, FSB v. Sowl*, No. 2011AP688, unpublished slip op., ¶ 14 (WI App April 11, 2013) (following *Lyon* and concluding that "[a] note . . . is offered for its legal effect and is not hearsay"); *Citi Mortgage, Inc. v. Hobach*, No. 2012AP1462–FT, unpublished slip op., ¶ 9 (WI App Feb 13, 2013) (following *Lyon* and concluding that a "note and its endorsement are contracts offered as evidence of a legal act and are not hearsay").

## C. Neis's Remaining Arguments

### 1. Assignment Attached to Zablocki Affidavit

¶ 51. Neis appears to make a stand-alone argument that the assignment attached to the Zablocki affidavit is inadmissible. As indicated above, the assignment is a certified document filed with the register of deeds and appears to show that the mortgage, and previously the note, were both assigned to Bank of America's predecessor in interest, BAC Home Loans, by MERS, as nominee for M&I on September 2, 2010.

¶ 52. Neis asserts that the assignment was signed by one of Bank of America's attorneys less than two weeks before Bank of America filed this foreclosure action. He argues that the assignment therefore "raises all kinds of red flags." However, the only purported "red flag" that Neis explains further is that, if the assignment was being offered under Wis. Stat. § 908.03(6), then the assignment was not admissible because it was prepared for litigation purposes. *See State v. Williams*, 2002 WI 58, ¶ 38, 253 Wis. 2d 99, 644 N.W.2d 919 ("Records prepared in anticipation of litigation traditionally have been deemed outside the reach of [§ 908.03(6)].") This argument is not persuasive because, under the reasoning from *Lyons* we have now adopted, the assignment is not hearsay and its admissibility does not depend on § 908.03(6). *See, e.g., McDonald v. National Enters., Inc.*, 547 S.E.2d 204, 210 (Va. 2001) (assignment not hearsay). We therefore uphold the circuit court's conclusion that the assignment is admissible.

### 2. Whether There Was a Genuine Issue of Material Fact

¶ 53. Neis makes a series of arguments in support of a broader assertion that, even if Bank of America's

documentary evidence is admissible, there is a genuine issue of material fact as to whether Bank of America is the entity with the right to enforce the mortgage and note. None of these arguments is well developed. *See State Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not consider inadequately developed arguments). In addition, Neis does not make clear which of these arguments he raised in the circuit court. *See State v. Ndina*, 2009 WI 21, ¶¶ 29–30, 315 Wis. 2d 653, 761 N.W.2d 612 (failure to timely raise an argument in the circuit court forfeits the argument on appeal). Nonetheless, to the extent we understand the arguments, we will address them in the remainder of this opinion.

¶ 54. Neis points out that his affidavit includes evidence that Bank of America led him to believe that it owned or held the mortgage and note before September 2, 2010, the date of the assignment. Neis argues that this evidence "is contrary to the Assignment . . ., which indicated the mortgage interest was assigned to Bank of America on September 2, 1010." We disagree. As least so far as Neis presents the issues, evidence that Bank of America may have led Neis to believe that it owned or held Neis's mortgage before Bank of America was assigned Neis's mortgage interest would not appear to demonstrate a genuine issue of material fact on the question of whether Bank of America is in fact the current owner or holder of the mortgage. Moreover, we observe that Neis's statement that the assignment "indicated the mortgage interest was assigned to Bank of America on September 2, 1010," appears to concede that Bank of America had the right to enforce the mortgage as of that date.

¶ 55. Neis also points out that the allonge originally from M&I and purporting to endorse the note in

blank contains a signature that does not match the typed name of the M&I employee shown on the signature line. Assuming without deciding that this signature mismatch raises a question as to the validity or effect of the endorsement, it does not matter. This is because Neis does not provide any explanation for why the endorsement was necessary to show Bank of America's right to enforce the note, given our conclusion in ¶ 52 above that the assignment of the mortgage is admissible. The assignment, which references a prior transfer of the note, is sufficient evidence to make a prima facie showing that BAC Home Loans is the assignee of the mortgage and note from MERS, as nominee for M&I, and Neis has presented no evidence to the contrary. Neis does not dispute that BAC Home Loans is the predecessor in interest to Bank of America and that Bank of America has the right to enforce whatever rights BAC Home Loans had. Indeed, Neis treats the two entities as interchangeable in portions of his briefing, including when he refers to the assignment as being to "Bank of America." Additionally, Neis affirmatively acknowledges in his briefing that BAC Home Loans was Bank of America's predecessor in interest and that the two entities merged.[12]

---

[12] For the first time in his reply brief, Neis raises a number of additional arguments regarding the effect of the assignment. He argues that he is challenging "whether there was authority for the assignment at the time it was signed;" that an "assignment of mortgage without an assignment of note is a nullity"; that "[d]espite a statement in the Assignment that the note was being transferred, MERS did not have authority to transfer the note" because "MERS does not own notes and does not have authority to transfer notes"; and that, "[i]f the Assignment transferred the Note, then BAC did not have standing when the case commenced." We decline to address these arguments, which come too late. *See A.O. Smith Corp.*, 222 Wis. 2d at 492.

¶ 56. Neis next points out that the note attached to the complaint was for approximately $163,000, while the note attached to the Doss-Parker affidavit was for $417,000. We agree with Bank of America, however, that this discrepancy does not create a genuine issue of material fact. Instead, when all the circumstances are considered, it shows only that Bank of America mistakenly attached an incorrect document to its complaint. Neis provides no persuasive reason why the initial mistake by Bank of America, later corrected, should prevent summary judgment.

¶ 57. Finally, Neis argues that Doss-Parker's affidavit and deposition testimony contain contradictory assertions relevant to whether Bank of America has the right to enforce the mortgage and note. In support of this argument, Neis asserts that Doss-Parker averred that Bank of America is the "holder" of the note but testified at one point in her deposition that "Fannie Mae," the government-sponsored Federal National Mortgage Association, is the "investor" in the note. Neis does not explain what the term "investor" means in this context. In any case, regardless whether Doss-Parker's affidavit and deposition could reasonably be reconciled on this point, we reject Neis's argument because he asserts, inconsistently, that Doss-Parker was not qualified to be a witness on these topics, either because she was offering purely legal conclusions or because she lacked personal knowledge of the underlying facts. If she was not so qualified, as Neis asserts, then her averments and testimony on these topics do not create a genuine dispute of material fact.

## CONCLUSION

¶ 58. In sum, for all of the reasons explained above, we affirm the circuit court's summary judgment of foreclosure.

*By the Court.*—Judgment affirmed.