John J. Avudria, individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

McGlone Mortgage Company, Inc., Defendant-Respondent.

Court of Appeals

*No. 2010AP2032. Submitted on briefs April 7, 2011. —Decided May 17, 2011.*

2011 WI App 95

(Also reported in 802 N.W.2d 524.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert K. O'Reilly* and *John D. Blythin* of *Ademi & O'Reilly, LLP*, of Cudahy.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Dean P. Laing* of *O'Neil, Cannon, Hollman, DeJong & Laing S.C.*, of Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. John J. Avudria appeals the circuit court's decision dismissing his complaint on summary judgment. Avudria contends that the circuit court erred in concluding, as a matter of law, that Avudria was not a "person who [wa]s aggrieved" under WIS. STAT. § 224.80(2) (2007–08),[1] when McGlone Mortgage Company, Inc. failed to use the forms drafted by the Wisconsin Department of Financial Institutions, Division of Banking ("DFI") in conjunction with Avudria's residential mortgage loan. Because we conclude that Avudria was not "aggrieved," we affirm.

## BACKGROUND

¶ 2. In late 2006, Avudria contacted McGlone, a Wisconsin-licensed mortgage broker, to assist Avudria in obtaining a mortgage loan to purchase a residential property. Obtaining a mortgage loan for Avudria was difficult, in large part because Avudria had filed for bankruptcy in the last seven years. In an attempt to obtain a mortgage loan for the full amount of the purchase price, McGlone initially split the mortgage application into two and began searching for a first mortgage loan from one lender, and a second mortgage loan from a different lender. In connection with that attempt, McGlone provided Avudria with a number of documents, which Avudria signed in December 2006, including a Mortgage Loan Origination Agreement. The Agreement was a one-page document setting forth: McGlone's name, address, and phone number; an explanation of the relationship between Avudria and McGlone; and an explanation of McGlone's compensation.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3. McGlone was ultimately able to obtain an adjustable rate first mortgage loan from Wells Fargo Bank for the full amount of the purchase price, $144,000, at an initial interest rate of 9.375%. Avudria closed on the loan in January 2007, at which time he signed numerous additional documents, including a Final Statement. The Final Statement stated, among other things, that Avudria understood that he was paying McGlone a $2160 loan originating fee and a $500 processing fee, and that Wells Fargo was paying McGlone a $1440 loan originating fee.

¶ 4. All of the documents Avudria signed were provided to McGlone by Calyx Software, a company founded "to provide accessible, affordable, and reliable software for all mortgage professionals." McGlone began using the Calyx's mortgage broker forms when it opened for business in 1999. McGlone continued to use the forms in Wisconsin until July 2008, when it learned that Wisconsin had begun requiring mortgage brokers to use forms prepared by the DFI, effective July 2005.

¶ 5. Avudria admits that he was fully aware, before he closed on the mortgage loan, of the fees he was paying to McGlone, and that he never voiced any objection to those fees. In fact, Avudria stated during his deposition testimony that he was "pleased" with the services he received from McGlone.

¶ 6. In February 2009, more than two years after the closing, Avudria filed this action against McGlone, alleging that McGlone failed to provide him with the Mortgage Broker Agreement and Consumer Disclosure Statement drafted by the DFI as required by Wis. Stat. § 224.79(1), (2), and Wis. Stat. § 224.77(1).

¶ 7. Thereafter, McGlone filed a motion for a declaratory ruling, seeking an order declaring that a person must demonstrate that he or she is "aggrieved,"

to wit, that he or she sustained actual damages or injury in order to state a cause of action under WIS. STAT. § 224.80(2), the provision permitting a private cause of action for a violation of WIS. STAT. ch. 224. The circuit court granted the motion, ordering that:

> for a person to be "aggrieved" under section 224.80(2), Wis. Stats., the person must sustain actual injury or damages as a result of a mortgage broker's failure to use the consumer mortgage broker agreement and the consumer disclosure statement in the forms prescribed by the [DFI.[2]]

¶ 8. In February 2010, McGlone filed a motion for summary judgment on the grounds that Avudria was not an "aggrieved" person under WIS. STAT. § 224.80(2). The circuit court agreed and granted the motion, dismissing Avudria's complaint.

¶ 9. The trial court entered judgment, dismissing the case and awarding taxable costs to McGlone in the sum of $1652.75. The parties subsequently entered into a Stipulated Satisfaction of Judgment, which was filed with the circuit court in August 2010, providing that "[t]he Judgment . . . is hereby acknowledged to be fully satisfied." Avudria appeals.

### DISCUSSION

¶ 10. First we must address McGlone's argument that we lack subject matter jurisdiction over this appeal because Avudria waived his right to appeal when he entered into the Stipulated Satisfaction of Judgment

---

[2] The Honorable David A. Hansher granted McGlone's motion for a declaratory ruling, but due to judicial rotation, the case was then transferred to the Honorable William W. Brash, III, who presided over the remainder of the case.

with McGlone. For the reasons set forth below, we conclude that Avudria did not waive his right to appeal.

¶ 11. Then, we address Avudria's argument that the circuit court erred in concluding that: (1) "for a person to be 'aggrieved' under [WIS. STAT. §] 224.80(2) . . . the person must sustain actual injury or damages as a result of a mortgage broker's failure to use the consumer mortgage broker agreement and the consumer disclosure statement in the forms prescribed by [DFI]"; and (2) Avudria was not a person aggrieved. For the reasons set forth below, we affirm.

## I. Subject Matter Jurisdiction

¶ 12. McGlone argues that we lack subject matter jurisdiction over Avudria's appeal because the parties entered into a Stipulated Satisfaction of Judgment, which states as follows:

1. On August 11, 2010[,] Judgment was entered in this case in favor of the defendant, McGlone Mortgage Company, Inc., and against the plaintiff, John J. Avudria, in the sum of $1,652.75.

2. The defendant, McGlone Mortgage Company, Inc., hereby waives its right to seek court review, pursuant to section 814.10(4), Wis. Stats., of the items of costs requested by the defendant, McGlone Mortgage Company, Inc., but disallowed by the Judgment Clerk.

3. The plaintiff, John J. Avudria, has fully paid the amount of the Judgment to the defendant, McGlone Mortgage Company, Inc.

4. The Judgment entered on August 11, 2010 is hereby acknowledged to be fully satisfied.

¶ 13. First, when interpreting a contract, we look for the intent of the parties in the plain language of the contract. *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832. Doing so here, we conclude that the stipulation cannot reasonably be construed to waive Avudria's right to appeal because by the plain language of the stipulation, while McGlone agreed to "waive[] its rights to seek court review . . . *of the items of costs requested* by . . . McGlone," Avudria did not expressly waive his right to court review of the underlying judgment. (Emphasis added.)

¶ 14. Second, the Wisconsin Statutes contemplate that a successful party can collect judgment without a losing party waiving its right to appeal. *See* WIS. STAT. § 806.09(1) (2009–10) ("If any judgment or part of a judgment is collected and such judgment is afterwards set aside or reversed, the trial court shall order the same to be restored with interest from the time of the collection . . . ."); *see also McDonald v. McDonald*, 2006 WI App 150, 294 Wis. 2d 863, 721 N.W.2d 524.

¶ 15. Therefore, we conclude that we have subject matter jurisdiction over Avudria's appeal and we turn to its merits.

## II. Avudria is not a "person who is aggrieved" under WIS. STAT. § 224.80(2).

¶ 16. Avudria asserts that the circuit court erred in dismissing his complaint on summary judgment because he is a "person who is aggrieved," pursuant to WIS. STAT. § 224.80(2), and, therefore, he argues that he has standing to file a private cause of action against

487

McGlone, for violation of Wis. Stat. §§ 224.77 and 224.79, despite having suffered no actual damages or injury. We disagree.

■

¶ 17. Our review of cases on appeal from summary judgment is well-known. We review the denial or grant of a summary judgment motion *de novo,* employing the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We must grant summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08(2) (2009–10).

¶ 18. Wisconsin Stat. § 224.79 provides as follows:

**(1)** Form and content of consumer mortgage brokerage agreements. Every contract between a mortgage broker and a consumer under which the mortgage broker agrees to provide brokerage services to the consumer shall be in writing, *in the form prescribed by rule of the [DFI],* and shall contain all information required by rule of the [DFI]. The [DFI] shall promulgate rules to administer this subsection in consultation with the loan originator council . . . . The [DFI] shall design these rules to facilitate the comparison of similar charges and total charges assessed by different mortgage brokers.

**(2)** Consumer disclosure statement. Before entering into a contract with a consumer to provide brokerage services, a mortgage broker shall give the consumer a copy of a consumer disclosure statement, explain the content of the statement, and ensure that the consumer initials or signs the statement, acknowledging that the consumer has read and understands the statement. The consumer disclosure statement shall contain a brief explanation of the relationship between the consumer and the mortgage broker under the proposed contract, a brief explanation of the manner in which the mortgage

488

broker may be compensated under the proposed contract, and any additional information required by rule of the [DFI]. *The [DFI] shall promulgate rules* to administer this subsection in consultation with the loan originator council ... *and, by rule, shall specify the form and content of the consumer disclosure statement* required under this subsection.

(Emphasis added.)

¶ 19. In accordance with Wis. Stat. § 224.79, the DFI created the following administrative rules concerning mortgage broker agreements and consumer disclosure statements:

**DFI-Bkg 44.01 Mortgage broker agreements.** **(1)** A mortgage broker agreement under s. 224.79 (1), Stats., shall contain all of the following:

(a) The name, address, telephone number and license number of the mortgage broker.

(b) A list of all terms and conditions.

(c) A list of services to be provided.

(d) A disclosure of mortgage broker fees.

(e) A disclosure of application fees.

(f) The signature of the applicant and the date the agreement was signed.

(g) The name and signature of the mortgage loan originator and the date the agreement was signed.

**(2)** . . . .

**(3)** *A mortgage broker agreement shall be on a form prescribed by the [DFI].*

(Emphasis added.)

489

**DFI-Bkg 44.02 Consumer disclosure state-
ment. (1)** A consumer disclosure statement under s.
224.79 (2), Stats., shall contain all of the following:

(a) The name, address, telephone number and
license number of the mortgage broker.

(b) A statement of duties.

(c) A statement of the nature of relationship.

(d) A disclosure of compensation.

(e) The signature of the applicant and the date the
agreement was signed.

**(2)** . . . .

**(3)** *A consumer disclosure statement shall be on a
form prescribed by the [DFI].*

(Emphasis added.)

¶ 20. Pursuant to WIS. STAT. § 224.79 and WIS.
ADMIN. CODE §§ DFI-Bkg 44.01–44.02, the DFI created
form mortgage broker agreements and consumer disclo-
sure statements to be used by Wisconsin-licensed mort-
gage brokers. Failure to use those forms may result in
discipline pursuant to WIS. STAT. § 224.77. McGlone ad-
mits in its answer to the complaint that it did not use
those forms when assisting Avudria obtain a loan.

¶ 21. WISCONSIN STAT. ch. 224 sets forth a number
of potential penalties for violations of the chapter, includ-
ing revocation of a mortgage broker's license, *see* WIS.
STAT. § 224.77(1)(k), and criminal penalties, *see* WIS.
STAT. § 224.80(1). As applicable here, § 224.80(2) sets
forth the requirements to assert a private cause of action
for a ch. 224 violation:

(2) PRIVATE CAUSE OF ACTION. *A person who is ag-
grieved* by an act which is committed by a mortgage

490

banker, loan originator or mortgage broker and which is described in s. 224.77 (1) may recover all of the following in a private action:

(a) An amount equal to the greater of the following:

1. Twice the amount of the cost of loan origination connected with the transaction, except that the liability under this subdivision may not be less than $100 nor greater than $2,000 for each violation.[3]

2. The actual damages, including any incidental and consequential damages, which the person sustained because of the violation.

(b) The aggregate amount of costs and expenses which the court determines were reasonably incurred by the person in connection with the action, together with reasonable attorney fees . . . .

(Emphasis added.)

¶ 22. The question before this court is whether Avudria is a "person who is aggrieved" under WIS. STAT. § 224.80(2), such that he can pursue a private cause of action against McGlone for its failure to use the forms required by the DFI. In order to answer the question, we must turn to the statute itself.

■■■

¶ 23. "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain from the statutory language, we ordinarily stop the inquiry and

---

[3] The legislature has since raised the maximum amount an individual can recover in a private cause of action to $25,000. *See* WIS. STAT. § 224.80(2)(a)1. (2009–10).

apply that meaning. *Id.*, ¶ 45. Non-technical words and phrases not defined within the statutory scheme are usually given their common, ordinary, and accepted meaning. *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. When interpreting a statute, " 'the court is not at liberty to disregard the [statute's] plain, clear words.' " *Id.* (citation omitted).

¶ 24. Based upon the plain language of WIS. STAT. § 224.80(2), we determine that a "person who is aggrieved" is one who suffered at least some actual injury or damage.

¶ 25. The Wisconsin Supreme Court has held that "the terms 'aggrieved' and 'injured' " are nearly synonymous, to wit, that "aggrieve" means " 'to inflict injury upon.' " *Liebovich v. Minnesota Ins. Co.*, 2008 WI 75, ¶ 37, 310 Wis. 2d 751, 751 N.W.2d 764 (citation omitted). In short, the plain meaning of the phrase "to inflict injury upon" requires a showing of *some* actual injury or damage.

¶ 26. To read the statute as Avudria suggests, as a strict liability statute permitting a private cause of action for a mere technical violation of WIS. STAT. ch. 224, requires that the word "aggrieved" be read out of the statute. "We avoid a construction of a statute that results in words being superfluous." *WDOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 45, 299 Wis. 2d 561, 729 N.W.2d 396. The legislature qualified the private-cause-of-action provision with the phrase "person who is aggrieved" for a reason. If the legislature had intended to permit all borrowers to file suit for violations of ch. 224, regardless of whether the borrower was injured by the

violation, it could have drafted the statute in a manner that omitted the word "aggrieved"; the legislature could simply have said that a mortgage broker is liable for the statutorily-prescribed damages if it fails to use the forms. Because the legislature included the word "aggrieved," we must interpret it to have meaning.

¶ 27. Avudria claims that *Liebovich* stands for the proposition that an aggrieved party under WIS. STAT. § 224.80(2) is merely a party who has standing to bring a claim, even if the injury upon which standing is premised is small or difficult to quantify, or is premised upon a technical statutory violation. In other words, Avudria claims that while a "person who is aggrieved" under § 224.80(2) must have an injury, that injury can be based solely upon a technical statutory violation, and an injury does not necessarily mean that an individual must be able to show injury or damage. *Liebovich* does not support Avudria's claims.

¶ 28. In *Liebovich*, Liebovich filed suit against his homeowner's insurance carrier for failing to defend him in a suit against his neighbors. *Id.*, 310 Wis. 2d 751, ¶ 1. Liebovich's neighbors had "filed a complaint against him alleging he had violated a 125–foot setback covenant deed restriction by building a portion of his new home too close to the shore of Geneva Lake." *Id.*, ¶ 3 (footnote omitted). In order to determine whether the insurer had a duty to defend Liebovich, the Wisconsin Supreme Court turned to the language of the insurance contract, which required the insurer to defend Liebovich if the neighbors' complaint sought " 'damages for personal injury or property damage.' " *Id.*, ¶¶ 21–22 (citing the insurance policy). The court examined whether the allegation in the neighbors' complaint that the neighbors were " 'aggrieved by Liebovich's violation of the building setback restric-

493

tion' " could reasonably be construed as alleging injury. *Id.*, ¶ 33 (citing the neighbors' complaint). The court concluded that it could.

¶ 29. Avudria attempts to argue that the supreme court's conclusion that the word "aggrieved," as used by the neighbors in their complaint, properly pled an injury for which Liebovich's insurer was obligated to defend, means that the word "aggrieved" in WIS. STAT. § 224.80(2) does not require an actual showing of damages. However, the neighbors in *Liebovich* could potentially show actual damages stemming from Liebovich's violation of the 125–foot setback. To the contrary, Avudria *admits* he suffered no damages and, in fact, was "pleased" with the work McGlone did on his behalf.

¶ 30. Furthermore, in invoking *Liebovich*, Avudria conveniently omits those parts of the supreme court's decision which do not support his argument. In particular, he ignores the court's explicit rejection of the insurer's argument that " 'aggrieved' means no more than a general invocation of legal standing," an argument that Avudria makes on appeal. *See id.*, 310 Wis. 2d 751, ¶ 36. Instead, the supreme court stated that "an 'aggrieved party' is defined in part as 'one having an interest . . . which is injuriously affected." *Id.* (citation omitted; ellipses in *Liebovich*). Avudria has alleged no such injury here.

¶ 31. In summary, we conclude that a person is aggrieved pursuant to WIS. STAT. § 224.80(2) only if he or she can show some injury or damage. Here, Avudria has made no such assertion; rather, he admits that he was "pleased" with McGlone's work.

*By the Court.*—Judgment affirmed.