KLOPPENBURG, J.
¶ 1 This is a foreclosure action initiated by Bank of New York Mellon against Gloria Bronson and Scott Bronson. The circuit court granted the Bank's motion for summary judgment of foreclosure on a note and mortgage executed by the Bronsons in 2007, and the Bank's motion to dismiss the Bronsons' counterclaims relating to two loan modification denials in 2009 and 2010. The Bronsons appeal, challenging the entry of summary judgment of foreclosure and the dismissal of two of their counterclaims.
¶ 2 As to the summary judgment of foreclosure, we conclude that: (1) the Bank's complaint states a claim upon which relief may be granted in terms of the Bank's standing to enforce the note; but (2) the Bank's submissions do not establish a prima facie case for foreclosure because (a) the Bank's submissions do not establish that the Bank possesses the original note, and (b) the Bank's submissions fail to establish the total amount owed on the loan.
¶ 3 As to the dismissal of the Bronsons' two counterclaims, we assume, without deciding, that the counterclaims were properly before the circuit court and conclude that: (1) the summary judgment record establishes no factual basis for the counterclaims that the Bank violated WIS. STAT. § 224.77 (2015-16)[1] or breached its contract with the Bronsons when the then servicer, Bank of America, N.A., denied them a permanent loan modification in 2009; (2) the summary judgment record establishes a genuine dispute of material fact as to whether the Bank, through its servicer Bank of America, denied the Bronsons a permanent loan modification in 2010 in violation of WIS. STAT. § 224.77 because the stated reason for that denial was allegedly false.
¶ 4 Accordingly, we conclude that the Bank's failure to establish as undisputed both its possession of the original note and the total amount due on the loan preclude granting summary judgment of foreclosure to the Bank; that the circuit court properly dismissed the Bronsons' counterclaims relating to the 2009 loan modification denial; and that a genuine dispute of material fact precludes dismissal on summary judgment of the Bronsons' WIS. STAT. § 224.77 counterclaim relating to the 2010 loan modification denial. Thus, we affirm in part, reverse in part and remand the case for further proceedings consistent with this opinion.
BACKGROUND
¶ 5 The following facts are undisputed for purposes of summary judgment, and are related in some detail to provide necessary context.[2]
¶ 6 In 2007, the Bronsons executed a note secured by a mortgage. In 2008, the Bronsons "were unable to stay current on [their] payments." In January 2009, Countrywide Home Loans Servicing L.P., the servicer of the Bronsons' loan at the time, offered the Bronsons a loan modification agreement, and the Bronsons returned a signed copy of the agreement in February 2009. The Bronsons made the required monthly payments through May 2009. In June 2009, the new servicer of the Bronsons' loan, Bank of America, N.A., as successor by merger to BAC Home Loan Servicing L.P. f/k/a Countrywide Home Loans Servicing L.P., advised the Bronsons that the modification would not continue because of missing "documentation evidencing income" and that they should apply for a new modification.
¶ 7 In January 2010, Bank of America offered the Bronsons a new loan modification referred to as a three-month "Trial Period Plan," which the Bronsons signed and returned to Bank of America in February 2010. The Bronsons paid the total due for the three months in one payment in February 2010, and made an additional payment in July 2010. In July 2010, Bank of America informed the Bronsons that their loan was not eligible for permanent modification because they "did not provide [Bank of America] with the documents [Bank of America] requested." Bank of America sent the Bronsons a Notice of Intent to Accelerate in February 2011.
¶ 8 The Bank of New York Mellon filed this action in 2012, alleging that the Bronsons failed to comply with the terms of the note and mortgage executed by the Bronsons in 2007 "by failing to pay past due monthly installments payments" as of February 2009, and seeking a judgment of foreclosure. The Bank alleged that it was "the current holder" of the note and attached to its complaint a copy of the note and mortgage. The Bronsons filed an answer along with affirmative defenses and counterclaims.
¶ 9 In October 2012, the Bank filed a motion for summary judgment of foreclosure and a motion to dismiss the Bronsons' counterclaims. In June 2013, the circuit court denied the Bank's motion for summary judgment and granted the Bank's motion to dismiss five of the Bronsons' counterclaims, "for the reasons given orally" at a hearing. The parties neither state those reasons nor produce a transcript of that hearing on appeal.
¶ 10 In December 2013, servicing of the loan transferred from Bank of America to Green Tree Servicing LLC.
¶ 11 In July 2014, the Bank and the Bronsons stipulated to the dismissal of this action without prejudice and with the right to reopen. Green Tree Servicing subsequently offered the Bronsons two trial loan modifications in 2014 and 2015 with different terms from either the 2009 or the 2010 loan modifications. The Bronsons did not submit payments in acceptance of either modification. In August 2015, Green Tree Servicing merged with Ditech Financial, LLC, the current servicer of the Bronsons' loan. This action was reopened on the Bank's motion in August 2016.
¶ 12 In March 2017, the Bank filed a motion for summary judgment of foreclosure and a motion to dismiss the Bronsons' affirmative defenses and counterclaims; the circuit court converted the motion to dismiss to a motion for summary judgment based on the parties' submission of affidavits. The circuit court granted both of the Bank's motions, ruling that the Bank established a prima facie case for summary judgment and dismissing the Bronsons' affirmative defenses and counterclaims because they "do not raise a genuine issue of material fact barring summary judgment." This appeal follows.
¶ 13 We will relate additional facts, particularly as to the averments in the affidavits submitted in support of and opposition to the Bank's motions, in the discussion that follows.
DISCUSSION
¶ 14 The Bronsons challenge the circuit court's decision granting summary judgment of foreclosure and dismissing two of their counterclaims. As to the grant of summary judgment, the Bronsons contend that the Bank fails to make a prima facie case for summary judgment of foreclosure for three reasons. First, the Bronsons contend that the Bank's complaint fails to state a claim upon which relief may be granted in relation to the Bank's standing to enforce the note. Second, the Bronsons contend that the Bank's submissions do not establish that the Bank possesses the original note. Third, the Bronsons contend that the Bank's summary judgment submissions fail to establish the amount due on the loan.[3]
¶ 15 As to the dismissal of their two counterclaims, the Bronsons contend that the parties' submissions create genuine issues of material fact as to whether, as they assert, "the Bank of New York Mellon's conduct" (1) violated WIS. STAT. § 224.77 and/or breached its contract with the Bronsons when the Bank of America denied them a permanent loan modification in 2009, and (2) violated WIS. STAT. § 224.77 when the Bank of America denied them a permanent loan modification in 2010.
¶ 16 As we explain, we reject the Bronsons' first summary judgment argument based on failure to state a claim, but we conclude that the Bank has not made a prima facie case for a summary judgment of foreclosure because its submissions fail to establish both that the Bank possesses the original note and the total amount due on the loan. As to the Bronsons' counterclaims, we conclude that the Bronsons fail to present any facts supporting their counterclaims relating to the 2009 loan modification denial, and that a genuine dispute of material fact precludes dismissal of their WIS. STAT. § 224.77 counterclaim relating to the 2010 loan modification denial.[4]
¶ 17 We review a grant of summary judgment de novo, employing the same methodology as the circuit court. Palisades Collection LLC v. Kalal , 2010 WI App 38, ¶ 9, 324 Wis. 2d 180, 781 N.W.2d 503. First we determine whether the pleadings set forth a claim for relief. Baumeister v. Automated Products, Inc. , 2004 WI 148, ¶ 12, 277 Wis. 2d 21, 690 N.W.2d 1. If they do, we next examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment. Palisades , 324 Wis. 2d 180, ¶ 9. If they do, we then examine the opposing party's submissions to determine whether material facts are in dispute entitling the opposing party to a trial. Id. A party is entitled to summary judgment if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).
I. Summary Judgment of Foreclosure
¶ 18 As stated, the Bronsons contend that the Bank fails to make a prima facie case for summary judgment for foreclosure, for three reasons. First, the Bronsons contend that the Bank's complaint fails to state a claim upon which relief may be granted in terms of the Bank's standing to enforce the note. Second, the Bronsons contend that the Bank's summary judgment submissions do not establish that the Bank possesses the original note. Third, the Bronsons contend that the Bank's summary judgment submissions fail to establish the amount due on the loan. As we explain, we reject the first argument and agree with the remaining two arguments.
A. Failure to State a Claim
¶ 19 The Bronsons' first argument implicates the first step of summary judgment methodology, namely, whether the Bank's complaint states a claim for relief in terms of the Bank's standing to enforce the note. Specifically, the Bronsons argue that the Bank was required to allege in its complaint when the endorsement in blank was made, because, according to the Bronsons, an endorsement made after filing is "insufficient to confer standing." We reject the Bronsons' argument as unfounded in Wisconsin law.
¶ 20 The Bronsons' argument tests "the legal sufficiency of the complaint." Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693 (quoted source omitted). In determining whether a complaint states a claim upon which relief may be granted, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Id. (citing Kaloti Enters., Inc. v. Kellogg Sales Co. , 2005 WI 111, ¶ 11, 283 Wis. 2d 555, 699 N.W.2d 205 ). A complaint needs only to give the opposing party fair notice of what the claim is and the grounds upon which it is based. Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis. , 2005 WI App 217, ¶ 47, 287 Wis. 2d 560, 706 N.W.2d 667. Whether a complaint adequately pleads a cause of action is a question of law we review de novo. Hermann v. Town of Delavan , 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).
¶ 21 The Bank's complaint alleges that it is "the current holder of a certain note and mortgage ..., true copies of which are attached hereto as Exhibits A and B." The complaint also alleges that the Bronsons executed the note, secured by the mortgage, in 2007 and promised to pay the principal balance plus interest in accordance with the terms of the note. The complaint alleges that as of February 2009 the Bronsons failed to make monthly payments as required by the terms of the note, and that the Bank elected to proceed with foreclosure with a six-month period of redemption and to waive a deficiency judgment. The copy of the note attached to the complaint is a note executed by the Bronsons, with an endorsement in blank.
¶ 22 Accepting the allegations in the complaint as true, it can be reasonably inferred from these allegations, and the attached copy of the note, that the Bank was in possession of the original note and would produce the original note during the litigation if needed, and therefore had standing to enforce the note by proceeding with foreclosure. See Bank of New York Mellon v. Klomsten , 2018 WI App 25, ¶¶ 22-26, 381 Wis. 2d 218, 911 N.W.2d 364 (concluding that a complaint provided sufficient notice of the plaintiff's standing to enforce a note where it could be reasonably inferred from the allegations and the attachment to the complaint of copies of the mortgage and note endorsed in blank, that the plaintiff was asserting that it will be able to prove that it possesses the original note at the time of judgment).
¶ 23 As in Klomsten , the Bronsons seek to impose additional pleading requirements that have no basis in Wisconsin law. See 381 Wis. 2d 218, ¶ 28 (referencing the Klomstens' argument based, as here, on Florida law). The Bronsons point to no Wisconsin law requiring a foreclosure plaintiff to initially allege, or later prove, the date the endorsement in blank was made. Moreover, their suggestion that the endorsement in blank here was made after the Bank filed its complaint makes no sense because the copy of the note that was attached to the complaint contains the endorsement in blank.
¶ 24 In sum, we conclude that the Bank's complaint contains fair notice to the Bronsons of the Bank's standing to proceed with a foreclosure claim. Therefore, we reject the Bronsons' argument that the complaint does not state a claim upon which relief may be granted.
B. Failure to Make Prima Facie Case that the Bank Possesses the Note
¶ 25 The Bronsons' second argument implicates the next step in summary judgment methodology, whether the Bank's summary judgment submissions make a prima facie case that it possesses the note and is therefore entitled to enforce it. We agree with the Bronsons that the submissions do not.
¶ 26 To foreclose on a mortgage that secures an instrument, a party must show that it is entitled to enforce the instrument by proving that it is the "holder" of the instrument or "a nonholder in possession of the instrument who has the rights of a holder."[5] WIS. STAT. § 403.301. Generally speaking, a "holder" is the person in possession of the instrument, in this case the note. WIS. STAT. § 401.201(2)(km)1. (a "holder" is "[t]he person in possession of a [note] that is payable either to bearer or to an identified person that is the person in possession"). A note endorsed in blank is payable to the bearer and is negotiated by transfer of possession alone. See WIS. STAT. §§ 403.201(1), 403.205(2). Thus, here, where the note is endorsed in blank, the Bank is entitled to a judgment of foreclosure on the mortgage, which secures the note, if it shows that it is entitled to enforce the note as the holder in possession of the note.
¶ 27 Conversely, as we have repeatedly ruled, where the note is endorsed in blank, the plaintiff fails to make a prima facie case for summary judgment of foreclosure when the plaintiff does not submit evidence sufficient to support a finding that it possesses the original note. See, e.g., Klomsten , 381 Wis. 2d 218, ¶ 32 (to be entitled to summary judgment a foreclosure plaintiff must prove that it is entitled to enforce a note endorsed in blank by establishing that it possesses the note).
¶ 28 Here, the evidence submitted by the Bank does not establish that the Bank possesses the original note. That evidence comprises an affidavit by Manjula Miller, who avers that she is a "Document Execution Representative" of Ditech Financial LLC, which is the current servicer of the Bronsons' loan. Miller avers that Ditech possesses the note "directly or through an agent." This averment is problematic for several reasons.
¶ 29 First, the disjunctive averment does not establish who possesses the note, whether the possessor is Ditech, the servicer, or "an agent," and fails to identify the agent. Second, to further complicate matters, the Miller affidavit attaches a "Possession Statement of Ditech Financial LLC" signed by Ditech employee Danielle Harris, who has checked a box indicating that the original is in the possession of the Bank . Miller does not make any reference to the Harris statement in her affidavit or make any attempt to resolve the apparent conflict between her and Harris's statements.
¶ 30 Third, the Bank fails to cite any legal authority supporting the proposition that a foreclosure plaintiff is entitled to enforce a note possessed by another, such as the servicer or an unidentified agent. See Klomsten , 381 Wis. 2d 218, ¶ 35 (noting that the Bank "pointed to no legal authority stating that a bank may enforce a note endorsed in blank that is in the possession of another, including the entity that services the loan for the bank"). Indeed, the Bank makes no argument on this issue at all. Accordingly, we take the Bank to concede that the Bronsons' argument on this issue is correct. See Schlieper v. DNR , 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (explaining that "[t]his court has held that respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute").
¶ 31 In sum, we conclude that the Bank fails to make a prima facie case that it possesses the note and is, therefore, entitled to summary judgment of foreclosure.
C. Amount Due on the Loan
¶ 32 Because we remand for further proceedings, for the sake of judicial economy we also address the Bronsons' third summary judgment argument, which is that the Bank's summary judgment submissions fail to make a prima facie case for foreclosure because they fail to establish the amount due on the loan. See State v. Temby , 108 Wis. 2d 521, 527, 322 N.W.2d 522 (Ct. App. 1982) (addressing second issue after reversing on first issue "in the interests of judicial economy" where the second issue was likely to arise again on remand). More specifically, the Bronsons argue that the affidavits by the Bank's servicers' employees, Miller and Szymoniak, do not establish the proper foundation to render the payment records attached to the affidavits admissible under the hearsay exception for records of regularly conducted activities. See WIS. STAT. § 908.03(6). As we explain, we agree.
¶ 33 Affidavits submitted in support of a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." WIS. STAT. § 802.08(3). "[T]he party submitting the affidavit need not submit sufficient evidence to conclusively demonstrate the admissibility of the evidence it relies on in the affidavit [but rather] need only make a prima facie showing that the evidence would be admissible at trial." Palisades , 324 Wis. 2d 180, ¶ 10.
¶ 34 For a record to be admissible under WIS. STAT. § 908.03(6), it must be "made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness." In other words, "a testifying custodian must be qualified to testify that the records (1) were made at or near the time by, or from information transmitted by, a person with knowledge; and (2) that this was done in the course of a regularly conducted activity." Palisades , 324 Wis. 2d 180, ¶ 20 (alteration in original). To be qualified, the witness must have personal knowledge of how the records were made and that they were prepared in the ordinary course of business. Id. , ¶ 21.
¶ 35 Two decisions by this court inform our examination of the affidavits here. In Palisades , Palisades Collections, LLC, the alleged buyer of a credit card account, had moved for summary judgment in an action against a cardholder for a balance owed on a credit card originally opened with Chase Manhattan Bank. Id. , ¶¶ 1, 3. In support of its motion for summary judgment, Palisades submitted an affidavit from a "duly authorized representative of [Palisades]," with account statements attached labeled "Chase ... Mastercard Account Summary." Id. , ¶4. The court concluded that the affidavit did not present any facts showing that the affiant, a Palisades employee, had personal knowledge of how the account statements were prepared and whether they were prepared in the ordinary course of Chase's business. Id. , ¶ 23. Therefore, the affidavit failed to establish a prima facie case because it did not show that the affiant was a witness who was qualified, based on personal knowledge, to testify to the elements required for admissibility of the account statements under the hearsay exception for records of regularly conducted activity. Id. , ¶ 1.
¶ 36 In Bank of America NA v. Neis , 2013 WI App 89, 349 Wis. 2d 461, 835 N.W.2d 527, a Bank of America employee submitted an affidavit in support of the Bank's motion for summary judgment for foreclosure, to which a payment history, notice of intent to accelerate, and account information statement were attached.[6] Id. , ¶ 7. The employee in Neis averred:
I am employed by [Bank of America] as a[n] AVP [assistant vice president], Operations Team Lead. I am familiar with the record keeping practices of [Bank of America]. I have received training on the computer systems used by [Bank of America] to service borrowers' loans, understand the codes used in those systems, and have personal knowledge of [Bank of America]'s computer system, including how information is made and kept in that system.
Id. , ¶ 25. In addition, and specifically with regard to the payment history, the notice of intent to accelerate, and the account information statement, the employee averred that she had "personal knowledge of [Bank of America]'s procedures for creating these records" and, for each document, recited the requirements of WIS. STAT. § 908.03(6). Neis , 349 Wis. 2d 461, ¶ 25.
¶ 37 The Neis court held that the employee's averments made a prima facie showing under WIS. STAT. § 908.03(6) that she had personal knowledge of how the three documents were prepared or created, and that they were prepared in the ordinary course of Bank of America's business activities. Neis , 349 Wis. 2d 461, ¶ 32. Specifically, the requisite personal knowledge was shown by the employee's averments that "[the three documents] were each 'taken from [Bank of America's] business records,' " that "she has personal knowledge of Bank of America's 'procedures for creating ' those records," and that " 'it is the regular practice of [Bank of America] to make such records.' " Id. , ¶ 31 (alteration in original). Notably, the court concluded that these averments, "in combination with [the employee's] more general averments in the preceding paragraphs of her affidavit," were sufficient to make the prima facie showing. Id.
¶ 38 Returning to this case, we first turn to the Miller affidavit. The Bronsons argue that the Miller affidavit does not suffice to establish the payment history from June 2007 to December 2013, because Miller's employer, Ditech, serviced the loan only since December 2013, and "Miller does not provide any information about her knowledge of the recordkeeping practices of the prior servicers and lenders." The Bronsons do not argue that the Miller affidavit does not suffice to establish the payment history during Ditech's tenure, from December 2013 to November 2016; accordingly, we address only the sufficiency of the Miller affidavit as to the pre-December 2013 payment history.
¶ 39 Miller attaches a copy of the payment history for the Bronsons' loan account from June 2007 through November 2016. Miller explains in detail how Ditech, which has serviced the loan since December 2013, uses a Loan Servicing System comprising certain tracking and accounting programs to process and apply payments on loans that Ditech services and how the records that Miller reviewed are created at Ditech. Miller then explains how Ditech converts the information obtained from prior servicers and loads that information into the Loan Servicing System, after checking to ensure the information is accurately transferred.
¶ 40 Applying the standards set forth in Palisades and Neis , we conclude that, while the Miller affidavit shows that Miller has the requisite personal knowledge as to how Ditech imports records from prior servicers and produces records of its own, nothing in the Miller affidavit shows that she has personal knowledge of Countrywide's or Bank of America's procedures for creating and maintaining the records prior to December 2013. See Palisades , 324 Wis. 2d 180, ¶¶ 4-5. Nor would it likely be possible for Miller to make such an averment, because she, at least as an employee of Ditech, would be expected to be familiar with the records only since December 2013, when Ditech commenced its role as servicer for that loan. Thus, the Miller affidavit does not make a prima facie showing of admissibility as to the attached payment history document.
¶ 41 The Bank makes two completely undeveloped arguments to the contrary. First, the Bank asserts that Palisades is distinguishable from this case and cites, inexplicably, to the circuit court's ruling that the Bronsons'' "argument amounts to speculation that the note was improperly negotiated." But, beyond restating the circuit court's ruling, the Bank does not explain why Palisades is distinguishable or how the circuit court's comments address the sufficiency of the Miller affidavit as to the payment history document entries before Ditech began servicing the loan. Second, the Bank restates the circuit court's ruling that Miller's affidavit is sufficient "to make a prima facie case that the Bank is entitled to enforce the note" under PNC Bank, N.A. v. Bierbrauer , 2013 WI App 11, ¶ 10, 346 Wis. 2d 1, 827 N.W.2d 124 (holding that loan servicer employee's averment that the plaintiff bank was the current holder of the note made a prima facie case of the bank's standing to enforce the note). But, again, beyond restating the circuit court's ruling, the Bank makes no argument grounded in the facts or law of PNC that would inform our decision in this de novo review. As stated, both arguments are not developed with respect to whether the Miller affidavit makes a prima facie showing of the admissibility of the payment history attached to the affidavit, and we do not consider those arguments further. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").
¶ 42 We next turn to the Szymoniak affidavit. Significantly, the Bank makes no argument whatsoever about the Szymoniak affidavit. To the extent that the Bank relies only on the Miller affidavit to establish the total amount due on the Bronsons' loan, we have explained above why that reliance fails. Because the Bank fails to explain how the Szymoniak affidavit might fill in the gaps left by the Miller affidavit regarding the amount due on the Bronsons' loan, we deem the Bank to have abandoned that argument. See Post v. Schwall , 157 Wis. 2d 652, 657, 460 N.W.2d 794 (Ct. App. 1990) ("Arguments raised but not briefed or argued are deemed abandoned by this court.").
¶ 43 In sum, we conclude that the Bank's submissions in support of summary judgment fail to make a prima facie case for foreclosure because they fail to establish the total amount due on the Bronsons' loan but we also conclude that there is no genuine issue of material fact regarding the amounts due on the loan from December 2013 to November 2016.
II. Dismissal of Counterclaims
¶ 44 As to the dismissal of their two counterclaims, the Bronsons contend that the parties' submissions create genuine issues of material fact as to whether, as they assert, "the Bank of New York Mellon's conduct" (1) violated WIS. STAT. § 224.77 or breached its contract with the Bronsons when the Bank, through its servicer Bank of America, denied them a permanent loan modification in 2009, and (2) violated WIS. STAT. § 224.77 when Bank of America denied them a permanent loan modification in 2010.
¶ 45 We pause to reference a gap in the record relating to the WIS. STAT. § 224.77 counterclaims addressed by the circuit court in its decision. In July 2013, after the circuit court dismissed the Bank's first summary judgment motion and before the parties stipulated to the dismissal without prejudice and with the right to reopen, the Bronsons filed a motion to add third-party defendant Bank of America and a motion to amend the pleadings, along with a third-party complaint against Bank of America and first amended counterclaims against the Bank of New York Mellon. The first amended counterclaims include, for the first time, the WIS. STAT. § 224.77 claims against the Bank. The first amended counterclaims also allege for the first time that the Bank is liable as the principal to Bank of America and that Bank of America was the successor to BAC (two of the loan servicers that negotiated the 2009 and 2010 loan modifications in dispute). The circuit court held a hearing on these motions brought by the Bronsons, but the parties do not produce a transcript of that hearing on appeal.
¶ 46 The notes from the clerk's file in the record report only that the circuit court denied the motion to add third-party defendant Bank of America. The record does not include any notes, order or other court document addressing the motion to amend the counterclaims. However, upon the reopening of the case the parties proceeded to litigate, and the circuit court addressed, the WIS. STAT. § 224.77 counterclaims, and the parties brief those counterclaims on appeal. Accordingly, we assume, without deciding, that the parties have acquiesced in addressing those counterclaims, and we express no view as to how the apparent gap in the record may be resolved on remand.
¶ 47 We return to the Bronsons' arguments relating to the amended counterclaims. More specifically, the Bronsons argue that the denial of the loan modifications, when the Bronsons made all required payments and provided all required documentation, breached the contract with the Bronsons in 2009 and, as to both the 2009 and 2010 loan modification denials, was incompetent, unprofessional, improper, fraudulent, and dishonest in violation of the following sections of WIS. STAT. § 224.77 :
(1) PROHIBITED ACTS AND PRACTICES . No mortgage banker, mortgage loan originator, mortgage broker ... may do any of the following:
....
(i) Demonstrate a lack of competency to act as a mortgage banker, mortgage loan originator, or mortgage broker in a way that safeguards the interests of the public.
....
(L) Engage in conduct that violates a standard of professional behavior which, through professional experience, has become established for mortgage bankers, mortgage loan originators, or mortgage brokers.
....
(m) Engage in conduct, whether of the same or a different character than specified elsewhere in this section, that constitutes improper, fraudulent, or dishonest dealing.
¶ 48 The Bronsons further allege and argue that the Bank is liable for these alleged violations "as the principal to Bank of America." They seek damages under WIS. STAT. § 224.80, which creates a private cause of action for a "person who is aggrieved by an act which is committed by a mortgage banker, mortgage loan originator, or mortgage broker in violation of [ WIS. STAT. § 224.77 ]" to recover actual damages.
¶ 49 We address the counterclaims first relating to the 2009 loan modification denial and then relating to the 2010 loan modification denial.
A. The 2009 Loan Modification Denial
¶ 50 As to the 2009 loan modification denial, the Bronsons in their affidavits aver as follows:
• they received from Countrywide and signed and returned to Countrywide a loan modification agreement in February 2009;
• they made the monthly payments required by the 2009 agreement through May 2009, when Bank of America denied the Bronsons a continuation of the modification because of missing documents and told them to reapply and submit required documents.
¶ 51 We conclude that the Bronsons present no facts supporting their counterclaims relating to the 2009 loan modification denial. Those counterclaims are premised on a challenge to Bank of America's stated reason for the denial, namely their failure to provide documentation evidencing income, but they do not aver that they provided that documentation until after Bank of America issued the denial. Accordingly, we conclude that the circuit court properly dismissed the Bronsons' counterclaims relating to the 2009 loan modification denial.
¶ 52 In light of our conclusion, we do not address the Bank's principal argument aimed at the Bronsons' breach of contract counterclaim, that the Bronson's claim is barred by the statute of frauds because the 2009 loan modification agreement is a land transaction that was not signed by the lender, as required by WIS. STAT. § 706.02. See Barrows v. American Family Ins. Co. , 2014 WI App 11, ¶ 9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").
B. The 2010 Loan Modification Denial
¶ 53 As to the 2010 loan modification, the Bronsons in their affidavits aver:
• they received from Bank of America and signed and returned to Bank of America a trial period plan in February 2010;
• they paid the amount of the three monthly payments required by the 2010 plan within the trial period;
• they submitted and resubmitted numerous times the documents requested by Bank of America between June 2009 and July 2010; they were told repeatedly and inconsistently throughout that period either that the documents had been received, or that the documents had not been received; and they resubmitted documents each time after they were told documents were missing;
• most pertinent here, they submitted the documents requested by Bank of America on June 1, 2010; on June 7 they were told by Bank of America that all necessary documents were received; on June 8 they were told by Bank of America that their 2009 tax returns were missing; on June 8 they faxed their 2009 tax returns twice to Bank of America; on June 14 they were told by the Bank of America that the documents were received; and on June 30 and July 9, 2010, they were told that the loan was being reviewed;
• their modification was denied in July 2010 solely because sufficient documents were not received.
¶ 54 As to the 2010 loan modification, Bank of America assistant vice president Szymoniak avers:
• the Bronsons signed and entered into a trial period plan in February 2010;
• the Bank of America sent the Bronsons letters on April 8 and May 11, 2010 requesting missing documentation;
• the Bank of America sent the Bronsons a letter on July 20, 2010 denying them a loan modification because, as stated in the letter, the Bronsons "did not provide us with the documents we requested."
¶ 55 Szymoniak then avers, "accordingly after numerous attempts to modify the subject loan, [the Bronsons] did not meet the necessary qualifications in order to be approved for a permanent loan modification."
¶ 56 We conclude that these averments, taken together, create a dispute of material fact as to whether the servicer of the loan violated WIS. STAT. § 224.77 when it issued the 2010 loan modification denial. We express no opinion as to whether, if so, the Bank can be held liable for that violation.
¶ 57 The Bank argues that this counterclaim was properly dismissed because the Bronsons fail to present any evidence that they "have suffered damages as a result." See Avudria v. McGlone Mortg. Co., Inc. , 2011 WI App 95, ¶ 31, 334 Wis. 2d 480, 802 N.W.2d 524 ("a person is aggrieved pursuant to WIS. STAT. § 224.80(2) only if he or she can show some injury or damage"). However, the Bank did not present this argument in the circuit court. We generally do not consider issues raised for the first time on appeal. See State v. Huebner , 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727. We conclude that the Bank has both forfeited its right to raise the argument on appeal and fails to provide a persuasive reason that we should entertain the argument despite the Bank's failure to preserve it in the circuit court.
¶ 58 Finally, we clarify that we do not consider an affidavit by the Bronsons' counsel that contains attached affidavits and declarations by Bank of America employees in a case brought in federal court in Massachusetts. Those employees averred, for example, that between 2009 and 2011 Bank of America instructed its employees to delay review or deny modifications outright by claiming documents were missing when they were not, so as to push homeowners to more expensive loans. The Bronsons argue that this "evidence" shows that Bank of America acted improperly here. We disagree, and we do not consider that evidence from an unrelated case. Moreover, it does not add anything material to the facts averred by the Bronsons in this case.
III. Further Proceedings
¶ 59 As explained above, we conclude that the Bank's failure to make a prima facie case establishing both that it possesses the original note and the total amount due on the loan preclude granting summary judgment of foreclosure to the Bank; that the circuit court properly dismissed the Bronsons' counterclaims as to the 2009 loan modification denial; and that genuine issues of material fact preclude dismissal of the Bronsons' WIS. STAT. § 224.77 counterclaim against the Bank as to the 2010 loan modification denial. We express no view as to what proceedings the circuit court may in the exercise of its discretion entertain following remand. We also clarify that nothing in this opinion should be taken to require that the Bronsons be relieved of their obligations under the 2007 note and mortgage, whatever those obligations are determined to be. Whether the terms of the 2010 modification are reinstated, or foreclosure or some other remedy is ordered, are among the discretionary determinations to be made by the circuit court following whatever proceedings the circuit court may in the exercise of its discretion entertain following remand.
CONCLUSION
¶ 60 For the reasons stated, we conclude that the Bank's failure to establish both its possession of the original note and the total amount due on the loan preclude granting summary judgment of foreclosure to the Bank; that the circuit court properly dismissed the Bronsons' counterclaims relating to the 2009 loan modification denial; and that disputed issues of material fact preclude dismissal of the Bronsons' WIS. STAT. § 224.77 counterclaim relating to the 2010 loan modification denial. Accordingly, we affirm the circuit court's decision dismissing the Bronsons' breach of contract counterclaim and WIS. STAT. § 224.77 counterclaim as to the 2009 loan modification denial, reverse the circuit court's decision granting summary judgment of foreclosure and dismissing the Bronsons' WIS. STAT. § 224.77 counterclaim as to the 2010 loan modification denial, and remand the case for further proceedings consistent with this opinion.
By the Court. -Judgment affirmed in part; reversed in part and cause remanded for further proceedings.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

On appeal, a party must include appropriate factual references to the record in its briefing. Wis. Stat. Rule 809.19(1)(d)-(e). Many of the Bronsons' citations in support of their factual assertions are instead to their appendix. The appendix is not the record. United Rentals, Inc. v. City of Madison , 2007 WI App 131, ¶ 1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. The Bronsons compound this error by failing to identify the record numbers to which their appendix corresponds in their appendix's table of contents. We remind counsel of their obligation to comply with the rule.

For the first time in their reply brief, the Bronsons make an additional argument, that the circuit court erroneously rejected their affirmative defenses of unclean hands and laches. "It is a well-established rule that we do not consider arguments raised for the first time in a reply brief." Bilda v. County of Milwaukee , 2006 WI App 57, ¶ 20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661. While the Bank in its response brief makes brief reference to the circuit court's dismissal of those two affirmative defenses, the Bank had no opportunity to address the Bronsons' specific argument challenging the court's dismissal of the defenses and, as a result, we do not consider this argument of the Bronsons.

We observe that the circuit court based its decision as to both of the Bank's motions on the summary judgment record developed by the parties. Before the circuit court, the Bank relied on one affidavit that it submitted in support of its first motion for summary judgment, by Bank of America employee Suzanne Szymoniak, and one affidavit that it submitted in support of its second motion for summary judgment, by Ditech Financial employee Manjula Miller; and the Bronsons relied on the two affidavits that each of them had submitted in opposition to the Bank's first summary judgment motion. We follow the parties' lead and conduct our de novo review based on the two affidavits submitted by the Bank and the two affidavits submitted by the Bronsons.
The Bank also submitted an affidavit by Bank of America employee Hans Anderson in support of its first motion for summary judgment, but only after oral argument was held on that motion. The circuit court does not reference that affidavit in its decisions on the first or second motions for summary judgment, and the Bank does not reference that affidavit in its circuit court briefing in support of its second motion for summary judgment or in its appellate briefing. Accordingly, we do not consider the Anderson affidavit in the course of our de novo review, but we express no view as to the use of the Anderson affidavit on remand.

An instrument may be enforced in other limited circumstances, neither of which the Bank argues apply in this case. See Wis. Stat. § 403.309 (lost, destroyed or stolen instruments) and Wis. Stat. § 403.418(4) (payment or acceptance by mistake).

Copies of the note and mortgage were also attached to the affidavit, but the court ruled separately on the admissibility of those documents, concluding that they were not hearsay and their admissibility did not depend on Wis. Stat. § 908.03(6). Neis , 349 Wis. 2d 461, ¶ 49. In this section, we discuss the court's ruling in Neis only as to the documents attached to the affidavit which are similar to those attached in the present case, namely the documents related to payment and account history and information.